# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | |
|---|---|
| SARAH JORN, TAMMY BRITZ, JOLENE LOCKWOOD, and GREGORY LOCKWOOD, individually and on behalf of all others similarly situated, | Case No. _____ |
| *Plaintiff*, | Judge: |
| v. | **JURY TRIAL DEMANDED** |
| AKORN OPERATING COMPANY LLC, | |
| *Defendant*. | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Sarah Jorn, Tammy Britz, Jolene Lockwood and Gregory Lockwood ("Plaintiffs") by and through their undersigned attorneys, on their own behalf and on behalf of all others similarly situated, upon personal knowledge as to themselves and their own acts and upon information and good faith belief as to all other matters, hereby bring this putative class action against Defendant Akron Operating Company LLC (hereinafter collectively referred to as "Akorn" or "Defendant"), and allege as follows:

## NATURE OF THE CASE

1. Plaintiffs bring this putative class action under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq*. (the "WARN Act"), to recover unpaid wages and other compensation owed after Defendant closed all U.S. sites and laid off all U.S. employees without proper notice on February 22, 2023.

2. The explicit purpose of the WARN Act is to provide protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs.

3. The requisite advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market. The WARN Act also provides for notice to State dislocated worker units so that dislocated worker assistance can be promptly provided. *See* 20 C.F.R. § 639.1(a).

4. Defendant is an Illinois-based pharmaceutical company that develops, manufactures and markets specialty pharmaceuticals, including prescription, consumer health and animal products.

5. Defendant has Research and Development facilities in Vernon Hills, Illinois and Cranbury, New Jersey. Defendant has manufacturing facilities in Decatur, Illinois; Amityville, New York and Hettlingen, Switzerland.

6. Upon information and good faith belief, Defendant employed substantially more than 100 employees, excluding part-time employees, as defined at 29 U.S.C. 2101(a)(8).

7. As of February 22, 2023, Plaintiffs were all longtime and in good-standing employees of Defendant; each of them worked at its "Production Center," which was one of two of Defendant's facilities in Decatur, Illinois.

8. On February 22, 2023, Defendant closed all of its U.S. sites and permanently laid off all of its U.S. employees, including Plaintiffs. *See Email from CEO Boothe to All US Akorn Employees, dated February 22, 2023, attached hereto as Plaintiff's Exhibit 1.*

9. Plaintiffs were *not* provided 60 days' written notice of their employment loss or the nationwide shuttering of Defendant's U.S. locations.

10. Thus, Plaintiffs and all others similarly situated, have suffered injury from Defendant's violations of the WARN Act.

**THE PARTIES, JURISDICTION AND VENUE**

11. Plaintiff Sarah Jorn began her career at Akorn in 2012 as a Chemist I. After working through the ranks to Lead Chemist III, she was promoted to a supervisor role in 2021. It was in this position, as a Focus Factory Lead/Production Supervisor, that she was employed at Defendant's Decatur, Illinois Production Center when she was terminated on or about February 22, 2023. Plaintiff Jorn is an individual citizen of the State of Illinois. Ms. Jorn resides in Decatur, Illinois.

12. Plaintiff Tammy Britz began her career at Akorn in 2014 as a Quality Assurance Auditor. After working through the ranks to Lead Technician, she was promoted to Production Supervisor in 2019. It was in this position that she was employed at Defendant's Decatur, Illinois Production Center when she was terminated on or about February 22, 2023. Plaintiff Britz is an individual citizen of the State of Illinois. Ms. Britz resides in Macon, Illinois.

13. Plaintiff Jolene Lockwood began her career at Akorn in 2007 as a Quality Assurance Auditor. After working through the ranks (Production Technician I to Lead Technician to Production Supervisor to Tech Services Supervisor), she was promoted to Production Manager in July of 2022. It was in this position that she was employed at Defendant's Decatur, Illinois Production Center when she was terminated on or about February 22, 2023. Plaintiff J. Lockwood is an individual citizen of the State of Illinois. Ms. Lockwood resides in Decatur, Illinois.

14. Plaintiff Gregory Lockwood began his career at Akorn in 2005 as a LYO Technician I. For the last approximately eleven (11) years, he was employed at Akorn as a Maintenance Technician. It was in this position that he was employed at Defendant's Decatur, Illinois Production Center when he was terminated on or about February 22, 2023. Plaintiff G.

Lockwood is an individual citizen of the State of Illinois. Ms. Lockwood resides in Decatur, Illinois.

15. Defendant Akorn Operating Company LLC is a Delaware Corporation with its principal place of business at 5605 Centerpoint Court, Gurnee, IL 60031. Defendant may be served through its registered agent, Illinois Corporation Service Company, at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

16. This Court has jurisdiction over the WARN Act claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

17. Venue is proper for the WARN Act pursuant to 29 U.S.C. § 2104(a)(5), because the violation is alleged to have occurred here and Defendant transacts business here.

## FACTUAL ALLEGATIONS

18. In early 2020, Akorn, Inc., then a publicly-traded Louisiana Corporation, filed for Chapter 11 bankruptcy protection.

19. On October 1, 2020, Akorn, Inc. announced the United States Bankruptcy Court for the District of Delaware had, on September 2, 2020, approved its sale to certain of the Company's term loan lenders.

20. Thereafter, Defendant reincorporated as a Delaware Corporation – and a private entity – under the name Akorn Operating Company LLC.

21. Defendant's registered principal place of business is 5605 Centerpoint Court, Gurnee, IL 60031.

22. Pursuant to Defendant's Illinois LLC filing report, Defendant operates under the following assumed names: Akorn Pharmaceuticals, Akorn, Taylor Pharmaceuticals, Akorn (New Jersey), VPI Holdings, 10 Edison Street, 13 Edison Street, Advanced Vision Research, Akorn

Animal Health, Akorn Consumer Health, Akorn Sales, Akorn Ophthalmics, Clover Pharmaceuticals, Covenant Pharma, Hi-Tech Pharmacal, Inspire Pharmaceuticals, Oak Pharmaceuticals, Versapharm, VPI Holding Sub and Olta Pharmaceuticals.

23. Defendant has Research and Development facilities in Vernon Hills, Illinois and Cranbury, New Jersey. Defendant has manufacturing facilities in Decatur, Illinois; Amityville, New York and Hettlingen, Switzerland.

24. Defendant employed substantially more than 100 employees, excluding part-time employees, as defined at 29 U.S.C. 2101(a)(8).

25. Defendant states, on its website, that it develops, manufactures and markets specialty pharmaceuticals, including prescription, consumer health and animal products.

26. Defendant further states that it is an industry leader in branded and generic products in alternate dosage forms such as ophthalmics, injectables, oral liquids, otics, topicals, inhalants and nasal sprays.

27. Defendant's Akorn Consumer Health division markets a portfolio of over-the-counter brands and private-label over-the-counter products, and its Akorn Animal Health division manufactures and distributes a full line of diagnostic, therapeutic, and over-the-counter ophthalmics, as well as speciality niche injectable drugs for the veterinary marketplace.

28. Defendant's website also lists Akorn Eye Care, which supports every aspect of eye health, whether anterior or posterior, diagnostic or therapeutic, dealing with both branded and generic ophthalmics.

29. On May 27, 2021, Defendant announced the sale of its Consumer Health business to Prestige Consumer Healthcare Inc. for $230 million in cash.

30. On March 9, 2022, Defendant announced the sale of seven branded ophthalmic products to Théa Pharma Inc. for an undisclosed amount.

### FEBRUARY 22, 2023: MASS TERMINATION

31. On February 22, 2023, Plaintiffs were all longtime and in good-standing employees of Defendant, all working at its Decatur "Production Center," which was one of two of Defendant's facilities in Decatur, Illinois.

32. Plaintiffs were called into an "all staff" meeting around 8:30 am on February 22, 2023, where a Human Resources employee lead a computer presentation and passed out written packets to Plaintiffs and all other employees present.

33. Plaintiffs and all other employees were then addressed by Douglas S. Boothe, President and CEO of Akorn, and Beth Zelnick Kaufman, Executive Vice President, Chief Legal Officer and Corporate Secretary of Akorn, via conference call.

34. Mr. Boothe informed Plaintiffs and all other employees they should pack their personal things and turn in their company property, as they were being terminated due to Defendant's sudden and previously unannounced shutdown.

35. Mr. Boothe told Plaintiffs and all other employees they would (i) be paid through approximately February 23, 2023, (ii) receive a payout for any unused Personal Time Off (PTO) and (iii) retain their insurance coverage through the end of February.

36. Mr. Boothe was very clear when addressing Plaintiffs and all other employees, that they would not receive any other severance or compensation.

37. Thereafter, at 10:52 am, Mr. Boothe authored an email to Akorn.US.ALL@akorn.com, which included Plaintiffs and all other employees. Mr. Boothe stated, in relevant part:

> Dear Employee,
>
> In 2022, Akorn Operating Company LLC (the "Company") initiated a process to sell the company. Despite the best efforts from all parties and interest from potential buyers, the Company did not receive an appropriate bid that would address outstanding liabilities. In light of the company running at a loss for some time, the Company's lenders will not provide the additional financing required to continue to run the business. Because the Company has insufficient liquidity to continue its operations, continue to seek a buyer and continue to retain its workforce, the Company will file cases under chapter 7 of the US Bankruptcy Code. In connection with that filing, the Company must shutdown all operations and terminate all of its employees.
>
> Effective immediately, we are closing all U.S. sites and laying off all employees as of Thursday February 23, 2023. These layoffs will be permanent.
>
> I truly regret that these actions have become necessary. This is a shock. It will take some time to absorb the news and what it means to you and your colleagues.
>
> This week a packet of information will be mailed to your home address. It will include benefits and other information to help you navigate through the stress and uncertainty created by these very difficult decisions. Should you have questions beyond what is covered in this packet, please direct your questions to AkornHR@akorn.com.

*See Email from CEO Boothe to All US Akorn Employees, dated February 22, 2023, attached hereto as Plaintiff's Exhibit 1.*

38.  Plaintiffs were not given 60 days' written notice of their employment loss or the nationwide shuttering of Defendant's U.S. locations.

## CLASS ALLEGATIONS

39. For purposes of the claims set forth below, brought pursuant to the WARN Act, 29 U.S.C. § 2101 *et seq.*, Plaintiffs assert a class (hereinafter the "Class") defined as follows:

> All individuals across the United States who, without cause, suffered an employment loss due to Defendant's mass layoff and/or plant closing without proper notice on or about February 22, 2023.

Excluded from the Class are Defendant's officers and directors, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

40. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

41. Plaintiffs reserve the right to add, amend, modify, or further define the Class, add subclasses, and/or to move for certification of a class or classes, including subclasses, defined differently than set forth above depending on the facts or law as discovered in this action.

42. If necessary to preserve the case as a class action, the Court itself can redefine the Class, create additional classes or subclasses, or both.

43. **Numerosity:** The exact number of Class Members is unknown and is not available to Plaintiffs at this time, but upon information and belief, there are substantially in excess of forty (40) potential Class Members, and individual joinder in this case is impracticable. Class Members, as well as rate of pay and benefits, can easily be identified through Defendant's records and are presently within the sole control of Defendant. Therefore, the "numerosity" requirement of Rule 23(a)(1) is met.

44. **Commonality:** The commonality requirement of Rule 23(a)(2) is satisfied because there are several questions of law and fact common to the claims of Plaintiffs and the Class Members, and those questions predominate over any questions that may affect individual Class

Members. Plaintiffs' claims are typical of those in the Classes and are based on the same legal and factual theories. Common questions include, but are not limited to, the following:

   a. whether Plaintiffs and Class Members were employed by Defendant;

   b. whether Defendant ordered a mass layoff and/or plant closing;

   c. whether Plaintiffs and Class Members suffered an employment loss due to Defendant's mass layoff and/or plant closing;

   d. whether Plaintiffs and Class Members were entitled to notice of the mass layoff and/or plant closing under the WARN Act;

   e. whether Defendant provided Plaintiffs and Class Members proper notice of the mass layoff and/or plant closing under the WARN Act;

   f. whether Defendant is subject to any potential defenses provided for in the WARN Act; and

   g. whether Plaintiffs and Class Members are entitled to damages, and what is the proper measure of damages.

45.     **Typicality:** Plaintiffs claims are typical of those of the Class because the claims arise from the same course of conduct and actions by Defendant and are based on the same legal theories. Plaintiffs, like other Class Members, were employed by Defendant and suffered an employment loss due to Defendant's mass layoff and/or plant closing on or about February 22, 2023. Plaintiffs, like other Class Members, did not receive proper notice of such employment loss pursuant to the Warn Act. Thus, Plaintiffs have sustained legal injuries arising from Defendant's conduct, as alleged herein, and Plaintiffs seek the same forms of relief for themselves and the proposed Class. Therefore, the "typicality" requirement of Rule 23(a)(3) is satisfied.

46. **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interest of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Accordingly, Plaintiffs satisfy the adequacy of representation requirements of Rule 23(a)(4) and Rule 23(g).

47. **Appropriateness:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Even if Class Members were able or willing to pursue individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

## CLAIMS FOR RELIEF

**VIOLATION OF THE WARN ACT, 29 U.S.C. § 2101 *ET SEQ.*
INDIVIDUALLY AND ON BEHALF OF THE CLASS**

48. Plaintiffs, individually, and on behalf of all others similarly situated, repeat, re-allege, and incorporate all preceding paragraphs as if fully set forth herein.

49. At all relevant times, Defendant was an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639.3(a), employing more than 100 employees, excluding part-time employees, who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

50. On or about February 22, 2023, Defendant ordered a mass layoff and/or plant closing, as those terms are defined by 29 U.S.C. § 2101(a)(2) and (3), when it closed all of its U.S. sites and permanently laid off all of its U.S. employees, including Plaintiffs.

51. The mass layoff or plant closing at the worksite resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2), (3) and (6), for at least fifty (50) of Defendant's employees as well as at least thirty-three percent (33%) of Defendant's workforce at any single site of employment, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2101(a)(8).

52. Plaintiffs and Class Members were terminated by Defendant without cause on their part, and thus, are "affected employees," within the meaning of 29 U.S.C. § 2101(a)(5), suffering "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(6).

53. Defendant was required by the WARN Act, 29 U.S.C. § 2102, to give the Plaintiffs and Class Members at least 60 days advance written notice of their terminations.

54. Defendant failed to give the Plaintiffs and Class Members written notice that complied with the requirements of the WARN Act.

55. Plaintiffs and each of the Class Members are "aggrieved employees" of the Defendant, as that term is defined in 29 U.S.C. § 2104 (a)(7).

56. Defendant failed to pay the Plaintiffs and each of the Class Members their respective wages, salary, commissions, and/or bonuses for 60 days from and after the dates of their respective terminations.

57. Defendant failed to pay the Plaintiffs and each of the Class Members their respective accrued benefit pay for 60 days from and after the dates of their respective terminations.

58. Defendant failed to make pension/401(k) contributions and/or provide employee benefits under COBRA to Plaintiffs and each of the Class Members for 60 days from and after the dates of their respective terminations.

59. Accordingly, Plaintiffs are authorized to bring this action against Defendant for its violation of the WARN Act pursuant to 29 U.S.C. § 2104(a)(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of the Class, respectfully pray for judgment against Defendant as follows:

A. Finding this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the Class defined herein;

B. Designating and appointing Plaintiffs as representatives of the Class and Plaintiffs' undersigned counsel as Class counsel;

C. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

D. Awarding Plaintiffs and the Class Members all damages available to Plaintiffs and the Class available under applicable law, including statutory or liquidated damages;

E. Awarding Plaintiffs and the Class Members reasonable attorneys' fees and costs incurred in this litigation; and

F. Granting all such other and further relief as the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury as to all issues stated herein, and all issues so triable.

Dated: February 23, 2023                Respectfully submitted,

By: */s/ David S. Almeida*

David S. Almeida
**Almeida Law Group LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(p) 312-576-3024
(e) david@almeidalawgroup.com